IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DRENDA K. BURRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:06-CV-0814-K |
| GERALD W. BRAZELL, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) and 56 (Doc. No. 49). The Court **GRANTS** the motion. Plaintiff's case is hereby **DISMISSED with prejudice**.

### I.    Factual and Procedural Background

Plaintiff Drenda K. Burris ("Burris") was hired in January 2003 as director of career services for the Southeastern Career Institute ("SCI") in Dallas, Texas. The institute is owned by Defendant Kaplan Higher Education Corporation ("Kaplan").

In February 2003, Plaintiff states, she stumbled in the break room at work and injured her back. By October 2003, her worsening back condition required surgery. She returned to work and, as her condition deteriorated, she required the use of a cane to walk. Because of these injuries, Plaintiff states, she requested medical leave under the provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

Plaintiff claims that Defendants Gerald W. Brazzell ("Brazzell"), the executive director of SCI, Domingo R. Montalvo ("Montalvo"), Kaplan's regional vice president

of operations, and Mitch Srail ("Srail"), Kaplan's human resources director, knew of her request for leave and fired her because of it in May 2004.  Plaintiff further alleges that Defendant committed assault and battery when he threatened and "grabbed" her immediately after she was fired.

Plaintiff states that she brings this action pursuant to the anti-retaliation provisions of the FMLA, claiming she was wrongfully discharged for requesting medical leave.  Specifically, Plaintiff asserts claims against each of the four Defendants for (1) interference and discrimination/retaliation in violation of the FMLA, 29 U.S.C. § 2615(a); (2) interference with contractual relationship; (3) intentional infliction of physical harm and emotional distress; and (4) slander.  Plaintiff also asserts a claim against Defendant Srail for assault and battery.

Defendants assert that Plaintiff was instead fired for misconduct.  Defendants move this Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or alternatively to grant Defendants summary judgment under Fed. R. Civ. P. 56.

## II.     Legal Standard

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are evaluated under the same legal standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *Chauvin v. State Farm Fire & Casualty Co.,* 495 F.3d 232, 237 (5th Cir. 2007); *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004).  The court accepts the plaintiffs' well-pleaded facts as true, and views them in the light most favorable to plaintiffs. *Johnson*, 385 F.3d at 529.  The motion for judgment on the pleadings should not be

granted unless the plaintiffs would not be entitled to relief under any set of facts that they could prove consistent with the complaint. *Chauvin,* 495 F.3d at 237.

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321–25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The Court has no duty to search the record for triable issues. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

III. **Analysis**

The Court notes that Plaintiff is proceeding *pro se*. Courts have adopted the rule

that the briefs and allegations of *pro se* litigants should be construed liberally. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Perez v. U.S.*, 312 F.3d 191, 194–95 (5th Cir. 2002). Thus, the Court construes Plaintiff's pleadings liberally and views all evidence and inferences in the light most favorable to her in reviewing Defendants' motion.

### A. FMLA Claim

Plaintiff asserts claims pursuant to the anti-retaliation provisions of the FMLA, 29 U.S.C. § 2601 *et seq*. The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons without the risk of losing employment. 29 U.S.C. § 2601(b). The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999). The FMLA also contains proscriptions against penalizing employees for exercising their rights. 29 U.S.C. § 2615(a)(1)-(2).

The traditional burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), is used to analyze FMLA claims. *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir. 2001). If a plaintiff establishes a *prima facie* case, the employer may negate it by articulating a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802; *Bienkowski*

*v. American Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988). If the employer articulates a legitimate, nondiscriminatory reason for its actions, the employee must then demonstrate the employer's proffered reason was pretextual. *McDonnell Douglas*, 411 U.S. at 256. A *prima facie* case of retaliation under the FMLA, requires that a plaintiff show: "(1) [s]he was protected under the FMLA; (2) [s]he suffered an adverse employment action; and (3) [s]he was treated less favorable than an employee who had not requested leave under the FMLA or the adverse decision was made because [s]he sought protection under the FMLA." *Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

The Court finds that Plaintiff has provided no evidence to meet her *prima facie* burden under the FMLA. First, her claims against individual Defendants Brazell, Montalvo, and Srail fail because they are not "covered employers" as contemplated by the term. 29 U.S.C. § 2611(4)(A)(i)(1999) (applying the Act's protections to private-sector employers with fifty or more employees). Instead, they are co-workers, albeit in supervisory positions. The FMLA does not contemplate holding individuals liable for corporate violations. *See Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (noting that "the FMLA offers no relief" against "individual defendants"). Thus, Burris cannot make an FMLA case against the individual Defendants. Even if the Act were found to apply to individuals in this context, Plaintiff has failed to plead a *prima facie* case because she has produced no evidence and asserted no facts indicating that any of the individual Defendants actually made the decision to terminate her. Consequently,

the Court must dismiss Plaintiff's FMLA claims against Brazell, Montalvo, and Srail pursuant to Fed. R. Civ. P. 12(c).

Second, Plaintiff's effort to plead a *prima facie* case against the corporate Defendant fails because she has produced no evidence that anyone involved in terminating her position at Kaplan knew of her request for medical leave. The medical documents Plaintiff has produced date back to six months before her termination. Plaintiff claims she spoke with Brazell about FMLA leave shortly before her termination, a claim Brazell denies in a sworn affidavit. Even if Plaintiff did speak with Brazell, she has not shown that he was involved in the decision to terminate her at all. Brazell, meanwhile, states that he was not in the room when the decision was made and provided no input. Consequently, Plaintiff has raised no fact issue with regard to her case against the corporate Defendant.

Even if Plaintiff had made out a *prima facie* case, Kaplan has articulated a non-retaliatory motive. Plaintiff admits she was told that she was discharged due to misconduct, specifically "telling students they could get their tuition back" and "having students at her home." Plaintiff has offered no rebuttal evidence to show these proferred reasons for her termination are pretextual. Instead, her own affidavit recites and restates the allegations of her Complaint in this case. In addition, Plaintiff presents unverified medical records that appear irrelevant to any retaliation claim and further are not competent summary judgment evidence to support her claims.

Thus, the Court must grant summary judgment for Defendant Kaplan on

Plaintiff's FMLA claims.

## B. Interference with Contractual Relationship

Plaintiff's claim for interference with contractual relationship appears akin to a common-law claim for tortious interference with contract. Examining this claim, a federal court must apply the substantive law of the forum state. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986). Thus, Texas state law is controlling on this claim.

In Texas, the elements of tortious interference with contract are 1) the existence of a valid contract; 2) the defendant willfully and intentionally interfered with the contract; 3) the interference proximately caused the plaintiff's injury; and 4) the plaintiff incurred actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

Here, Plaintiff has not satisfied the required elements for a tortious interference claim. She has not demonstrated the existence of a valid contract, which alone is fatal to her claim. She further has not demonstrated any willful or intentional interference. Her conclusory affidavit notwithstanding, Plaintiff has failed to produce any evidence to support her claim. Thus, the Court must grant summary judgment for Defendant.

## C. Intentional Infliction of Physical Harm and Emotional Distress

Plaintiff asserts claims for intentional infliction of physical harm and emotional distress. Plaintiff cites no case law, and the Court is unaware of a cause of action for intentional infliction of physical harm other than assault, which Plaintiff asserts

separately against one Defendant. The Court thus analyzes Plaintiff's claim as an alleged tort of intentional infliction of emotional distress ("IIED"), which is rooted in the common law.

Under Texas law, the elements of an IIED claim are that 1) the defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's actions caused the plaintiff emotional distress; and 4) the resulting emotional distress was severe. *Hoffmann-La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004); *Bryant v. Lucent Technologies,* 175 S.W.3d 845, 849 n.1 (Tex. App.—Waco 2005, pet. denied).

To be liable for intentional infliction of emotional distress, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 817-18 (Tex. 2005). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. *Hoffmann-LaRoche,* 144 S.W.3d at 445. It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous, and if reasonable minds may differ, the issue shall be submitted to the jury. *Hoffmann-LaRoche,* 144 S.W.3d at 445; *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex. 1999).

Intentional infliction of emotional distress is a "gap-filler" tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant

intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress. *Standard Fruit and Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998). Importantly, the tort is not intended to supplant other available statutory or common law remedies, and does not apply where the defendant intended to invade some other legally protected interest, even if emotional distress results. *Hoffmann-LaRoche,* 144 S.W.3d at 447–48.

In addition to her IIED claim, Burris has brought a statutory claim under the FMLA to redress her alleged injury. Because the alleged illegal conduct, if proven, would be remedied under the FMLA claim, there is no "gap" to be filled with a claim for intentional infliction of emotional distress. *Id.* It is apparent from Plaintiff's pleadings that the gravamen of her complaint is really another tort. Thus, because Burris has an adequate statutory remedy to address the core of her complaint and the entirety of her alleged damages, the Court must dismiss her IIED claim. *See id.* ("[W]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.").

### D. Slander

Plaintiff's slander claim arises under state law. Under Texas law, the statute of limitations for slander is one year. TEX. CIV. PRAC. & REM. CODE § 16.002(a). Plaintiff complains of acts that occurred in May 2004. This suit, however, was filed in May 2006, two years later. Thus, Plaintiff's slander claim is time-barred under Texas law and must be dismissed pursuant to Fed. R. Civ. P. 12(c).

### E. Assault and Battery

Plaintiff asserts assault and battery claims against only Defendant Srail. These state law claims are well-defined in Texas. Both criminal and civil law use the same definition of assault. *Forbes v. Lanzl*, 9 S.W.3d 895, 899 (Tex. App.—Austin 2000, pet. denied). A person commits an assault if he or she (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PEN. CODE § 22.01(a). Further, words alone do not constitute an assault. *Cox v. State*, 242 S.W.2d 369, 370 (Tex. 1951). Battery does not require an assault; it requires only an offensive touching, not an intent to injure. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex. 1967).

In a sworn affidavit, Burris claims Srail "was hostile and angry and physically grabbed me" at the time of her termination. Srail, in his sworn affidavit in response, states that he made no physical contact with Burris and made no threatening gestures. "To the contrary," Srail states, "throughout the course of the episode I attempted to maintain a safe distance from Burris considering her continued shouting and overtly hostile and aggressive conduct." Srail states that his only "threat" was to call police if Burris did not leave the premises.

Plaintiff provides no evidence to the contrary. There is no affidavit from a

witness, no police report, no hospital records, and absolutely no evidence other than her own word that Srail threatened and grabbed her—an allegation Srail vigorously and plausibly denies. Again, mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Abbot*, 2 F.3d at 619. Because there is no probative evidence on the claims of assault and battery, the Court must grant summary judgment for Defendant Srail.

IV. **Conclusion**

For these reasons, the Court **GRANTS** Defendant's motion. Plaintiff's claims are **DISMISSED with prejudice**. Judgment will be entered by separate document.

**SO ORDERED.**

Signed December 15th, 2008.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE